# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SUSIE D. BERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 14 C 127 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Susie D. Berry's (Berry) motion for summary judgment and Defendant Social Security Administration's (SSA) motion for summary judgment. For the reasons stated below, SSA's motion is denied, Berry's motion is granted in part, and this matter is remanded to SSA for further proceedings consistent with this opinion.

## BACKGROUND

In November 2010, Berry filed for Disability Benefits Insurance and Supplemental Security Income. The claims were denied by SSA and denied again upon a request for reconsideration. Berry then appeared in a hearing (Hearing) before an Administrative Law Judge (ALJ), and on October 23, 2012, the ALJ entered a decision against Berry. On November 5, 2013, the Appeals Council denied

review, and on January 8, 2014, Berry filed the instant appeal. Berry has filed a motion for summary judgment, seeking to have the ALJ's decision reversed and remanded for an award of benefits, and seeking in the alternative to have this case remanded to the ALJ for further proceedings to correct errors made by the ALJ. SSA has filed a motion for summary judgment seeking to have the ALJ's decision affirmed.

## LEGAL STANDARD

Pursuant to 42 U.S.C. §405(g), a party can seek judicial review of administrative decisions made under the Social Security Act. When an ALJ's decision is deemed to be "the final action of the Social Security Administration, the reviewing district court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal criteria." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).

## DISCUSSION

An ALJ examines a claim of disability under a five-step process. *Craft v. Astrue*, 539 F.3d 668, 673-74 (7th Cir. 2008). In step one, the ALJ "considers whether the applicant is engaging in substantial gainful activity." *Id.* In step two, the ALJ "evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement." *Id.* In step three, the ALJ "compares the impairment to a list of impairments that are considered conclusively disabling." *Id.* If the applicant's impairment satisfies "or equals one of

the listed impairments, then the applicant is considered disabled" and the inquiry ends. *Id.* If the inquiry continues, in step four, the ALJ "assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work." *Id.* In step five, the ALJ "assesses the applicant's RFC, as well as her age, education, and work experience to determine whether the applicant can engage in other work," and "[i]f the applicant can engage in other work, he is not disabled." *Id.*

In the instant appeal, Berry argues: (1) that the ALJ erred in making credibility determinations as to Berry's alleged pain and impairments, and (2) that the ALJ erred in determining Berry's RFC.

I. Credibility Determinations

Berry contends that the ALJ erred in evaluating the credibility of Berry as to her impairments and pain. Credibility assessments made by an ALJ are given "special, but not unlimited, deference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012)(stating that "[t]he ALJ must consider a number of factors imposed by regulation, . . . and must support credibility findings with evidence in the record"); *see also Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014)(stating that "[a]n ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results").

A. Headaches

Berry contends that the ALJ erred in discounting Berry's claims of severe headaches. The ALJ concluded that although Berry "alleged that she suffered from

migraine headaches," the record "reflects no consistent treatment for this alleged impairment." (AR 25). The ALJ also concluded that "[t]he claimant has not generally received the type of medical treatment one would expect for a totally disabled individual." (AR 25). There is ample evidence in the record showing that Berry sought treatment for severe headaches. For example, in 2010 she was treated for "Headache: secondary to cervicogenic or migraine or tension" and the record includes medical records that indicate a "history of migraine[s]." (AR 254-260). Other medical records also indicate that Berry had a "complaint of headaches." (AR 575). The record further shows that Berry had CT scans in 2010 and 2011, which Berry contends were performed to investigate the cause of her severe headaches. (AR 326, 410, 587). The ALJ also noted himself in referencing the record that in 2010, Berry was hospitalized for three days, in part due to a severe headache. (AR 26). An ALJ cannot "disregard an applicant's subjective complaints of pain simply because they are not fully supported by objective medical evidence," but "a discrepancy between the degree of pain claimed by the applicant and that suggested by medical records is probative of exaggeration." *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005). In the instant action, the ALJ failed to explain how the record reflects no consistent treatment for severe headaches, and the ALJ failed to point to any medical evidence that would contradict Berry's assertions as to severe migraines. The ALJ also failed to explain why he was discounting the evidence in the record that corroborated Berry's claims as to severe headaches. The ALJ thus failed to adequately explain his decision in this regard and build the necessary connection to his conclusion. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir.

4

2014)(stating that "[i]n reaching its decision, the ALJ must build a logical bridge from the evidence to his conclusion"). On remand, the ALJ should review the record and reassess whether Berry's subjective complaints as to severe headaches were exaggerated or not and then make the proper credibility determination.

B. Neck Pain

Berry contends that the ALJ erred in regard to his credibility assessment as to Berry's neck pain. The ALJ concluded that in regard to Berry's claim of neck pain, "although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature." (AR 25). The ALJ further concluded that "the objective medical evidence does not support the alleged severity of her impairments." (AR 26). The record, however, is replete with treatment for Berry that corroborates her claims of severe neck problems and pain. For example, in 2009, there was a determination that Berry had arthritis in her spine with decreased range of motion in the cervical spine. (AR 242, 245). Berry was repeatedly treated for cervical spondylosis, neck pain, and limited range of motion in her neck. (AR 254-97, 331-335, 383, 402, 410-13, 479, 560, 564-67). The record also indicates that Berry had been involved in a serious vehicular accident, which injured her neck. (AR 243). Berry had a CT scan which showed degenerative changes at C5-6 with moderate disc space narrowing, and in October 2011, Berry complained of "radicular neck pain," and was found to have diffuse myalgias with impression of cervical radiculopathy. (AR 410, 638-39). The record indicates that Berry received medication as treatment for her severe neck pain.

(AR 638-39). Although the ALJ noted that Berry "merely received medications for her neck pain," and did not get surgery or injections, the ALJ failed to properly explain why he considered the particular medications prescribed to be only routine or conservative care. (AR 25-26). Therefore, on remand the ALJ should review the record, reassess Berry's neck pain and then make the proper credibility determination.

    C.  Observations at Hearing

Berry contends that the ALJ erred in regard to his credibility assessment based on observations made by the ALJ at the Hearing. In gauging whether Berry's claimed impairments and pain were accurate, the ALJ noted that Berry "responded to [the ALJ's] question in an appropriate manner and participated in the hearing closely and fully and without any overt pain other than holding her head rigidly." (AR 26). The ALJ gave some weight to "the apparent lack of discomfort at" the Hearing. (AR 26). However, the fact that Berry was able to function during the limited duration of the Hearing bears little on her credibility of her impairments. The ALJ effectively penalized Berry for doing her best to participate in the Hearing and answer questions. Under the ALJ's logic, a claimant's best option would be to feign ailments so serious that the claimant is unable to even participate in a hearing. There is also medical evidence in the record that indicates Berry is likely to have good days and bad days in regard to her symptoms. (AR 645). Thus, even if Berry was able to fully participate in a hearing on any given day, that would not necessarily contradict the medical evidence as to Berry's symptoms and pain. The ALJ failed to point to

6

specific facts in the record that would materially conflict with the claimed symptoms and impairments by Berry. In fact, the ALJ noted certain facts, such as that Berry held her head rigidly at the Hearing, which indicate that Berry may in fact have been suffering from neck or head pain at the Hearing. (AR 26). On remand, if the ALJ relies upon his first-hand observations, the ALJ should properly support his ultimate credibility determination and explain how, the ability to participate in the hearing was contrary to Berry's claimed symptoms.

### D. Treating or Examining Physician Opinion

Berry contends that the ALJ erred in regard to his credibility assessment based on the conclusion that no treating or examining physician found Berry to be disabled. The ALJ noted that "the record does not contain any opinions for treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in" the ALJ's decision. (AR 29). Berry indicates that such records from a treating physician do exist. On remand, the ALJ should consider all such evidence.

### E. Daily Activities

Berry contends that the ALJ erred in regard to his credibility assessment based on Berry's daily activities. The ALJ noted that Berry "socializes with friends and attended doctor[s'] appointments," and that she could "dress, bath[e], brush her teeth and comb her hair without assistance . . . ." (AR 23). Berry contends that the ALJ did not properly delineate her daily activities. The statement made by the ALJ as to

7

Berry's daily activities is accurate based on the record. Although there is evidence in the record as to certain limitations, such as that Berry does not drive, and her children help with chores, the ALJ addressed some such limitations. (AR 23, 25, 243). For example, the ALJ noted that Berry needed help in getting dressed. (AR 23, 25). The ALJ was not required to reference every piece of evidence in the record in giving his decision. *See Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014)(stating that an ALJ "need not mention every piece of medical evidence in her opinion, but []he cannot ignore a line of evidence contrary to h[is] conclusion"). Thus, the ALJ did not err in his assessment of Berry's daily activities. However, such participation in daily activities does not necessarily contradict the other evidence as to Berry's symptoms and pain.

II. RFC Determination

Berry argues that the ALJ erred in determining her RFC. The RFC determination "is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). The ALJ must base the RFC determination "on all the relevant evidence in the record." *Id.*; *see also Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012)(stating that an ALJ is not required to "mention every snippet of evidence in the record," but an ALJ "must analyze a claimant's impairments in combination" and "may not ignore entire lines of contrary evidence").

The ALJ concluded that "the claimant has the residual functional capacity to perform a range of light work. . . ." (AR 25). However, the record indicates that

Berry has a significant limp, problems with standing and needs a cane, and has pain in her feet. (AR 25, 242-46, 375, 573, 606). The ALJ also failed to properly address conflicts between the medical assessments in the record presented by the state agency reviewer and the source statement from the consultative examination. (AR 407). The ALJ also failed to adequately address the evidence in the record indicating severe impairments in the cervical spine and neck. On remand, the ALJ should consider all evidence material to the RFC determination, including any new evidence offered by Berry, in order to make a proper RFC determination.

## CONCLUSION

Based on the foregoing analysis, SSA's motion is denied, Berry's motion is granted in part, and this matter is remanded to SSA for further proceedings consistent with this opinion.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 12, 2014